UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DUVALL CONTRACTING LLC,** | Civ. No. 2:11-cv-02705 (WJM) |
| Plaintiff, | |
| v. | **OPINION** |
| **NEW JERSEY BUILDING LABORERS' DISTRICT COUNCIL,** *et al.*, | |
| Defendants. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Duvall Contracting LLC ("Duvall Contracting") brings this motion to vacate two arbitration awards issued in favor of the New Jersey Building Laborers' District Council and the Laborers International Union, Local 325 (collectively, the "Union") and the New Jersey Building Laborers Statewide Funds (the "Funds"). There was no oral argument. Fed. R. Civ. P. 78. For the reasons set forth below, Plaintiff's motion to vacate the arbitration awards is **DENIED**.

   I.   BACKGROUND AND PROCEDURAL HISTORY

This case arises out of a dispute about whether Duvall Contracting, a company employing non-union labor, was a double-breasted operation of Damico Inc., a company employing union labor. Damico Inc. was established in March 1997 to perform garbage disposal, wrecking, and interior demolition. In 2001, Damico Inc. became a signatory to

1

a Collective Bargaining Agreement ("CBA") with the Union, which required Damico Inc. to use union labor for certain types of work. (*See* Compl. Ex. 1, ECF No. 1-1 ("CBA").) Article 17.20 of the CBA, an anti-double breasting provision, prohibited Damico Inc. from maintaining a second, non-union company in the same line of work for the purpose of utilizing non-union labor. (CBA at 61.)

Between January and October 2009, Damico Inc. employed union laborers to perform demolition work on a building formerly occupied by the New York Times ("NY Times Project"). On September 22, 2009, Walter Duvall, Damico Inc.'s President and 50% owner, formed a new company called "Duvall Contracting LLC." Approximately one month later, Damico Inc. was dissolved. Duvall Contracting then hired non-union employees and took over Damico Inc.'s work on the NY Times Project.

On August 23, 2010, the Union initiated an arbitration proceeding against Duvall Contracting, alleging that Duvall Contracting was a double-breasted operation of Damico Inc. On September 29, 2010, the Funds initiated a similar arbitration proceeding, alleging that Duvall Contracting was liable for benefits contributions that Damico Inc. had failed to make to the Funds.[1] In June of 2010, Duvall Contracting filed an order to show cause seeking to permanently enjoin both arbitrations on the ground that Duvall

---

[1] Between January 2006 and December 2008, Damico Inc. failed to make benefits contributions as required under Article 14 of the CBA. (*See* CBA at 49-54.) On November 27, 2009, an Arbitrator entered an award in favor of the Funds for the delinquent benefits contributions, and this award was confirmed by Judge Linares on February 1, 2010. Order Granting Mot. to Confirm Arbitration, *N.J. Building Laborers Statewide Benefit Funds and the Trustees Thereof v. Damico, Inc.*, No. 09-6542 (D.N.J. Feb. 1, 2010).[1] By the time the award was confirmed, Damico Inc. had dissolved.

Contracting was not a party to the CBA. After holding a trial, Judge Sheridan ruled that "the arbitrator is the appropriate person to decide whether the anti-double breasting provision is engendered." (Compl. Ex. 6, at 8, ECF No. 1-6.) Judge Sheridan noted that "[t]here's no doubt from the testimony that Mr. Duvall, Walter Duvall, was an owner, officer and manager of both Damico and Duvall Contracting." (*Id.* at 6-7.)

The arbitrations resumed, and the Arbitrator ultimately found that Duvall Contracting was a double-breasted operation of Damico Inc. The Arbitrator entered two awards. The first award, entered on February 28, 2011, held Duvall Contracting liable to the Funds for Damico Inc.'s delinquent benefits contributions. The Arbitrator further held that Duvall Contracting was bound by the CBA, and as such, remained obligated to the Funds for future benefits contributions. The second award, entered on March 4, 2011, held Duvall Contracting liable to the Union for using non-union labor on the NY Times Project. Duvall Contracting now moves to vacate both of these arbitration awards.

## II.     DISCUSSION

### A.  Standard of Review

A district court's review of an arbitration award is "exceedingly narrow." *Eichleay Corp. v. Int'l Ass'n of Bridge, Structural, & Ornamental Iron Workers*, 944 F.2d 1047, 1056 (3d Cir. 1991). A district court can vacate an arbitration award if the arbitrator shows a manifest disregard for the terms of the CBA or exceeds his authority. *Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F.3d 272, 279-80 (3d Cir. 2004). However, as long as the arbitrator was even arguably applying the

contract and acting within the scope of his authority, the fact that a court is convinced that he committed a serious error does not suffice to overturn his decision. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). Thus, an award will be confirmed unless it is "irrational." *Eichleay Corp.*, 944 F.2d at 1059 (quoting *Roberts & Schaefer Co. v. Local 1846, United Mine Workers*, 812 F.2d 883, 885 (3d Cir. 1987)).

### B. The Arbitrator's Determination that Duvall Contracting Was a Double-Breasted Entity of Damico Inc. Was Not Irrational.

There was ample evidence from which the Arbitrator could conclude that Damico Inc. and Duvall Contracting were a double-breasted entity in violation of the CBA. Article 17.20 of the CBA provides that "the terms of this Agreement shall be applicable" to "any work of the type covered by this Agreement at any work site" performed "under the name of another entity [over which] the Employer, including its owners, stockholders, officers, directors, or partners, exercise[s] . . . any significant degree of ownership, management or control." (CBA at 61); *see also Blair Comms., Inc. v. Int'l Brotherhood of Electrical Workers, Local Union No. 5*, 640 F. Supp.2d 636, 641 (W.D. Pa. 2009) (internal quotations omitted) (A double-breasted entity exists where an "employer maintains one company that is a signatory to a CBA while maintaining a second, non-union company in the same line of work in order to utilize non-union labor").

It is undisputed that Mr. Duvall was the President and 50% owner of Damico, Inc. and that he is a 100% owner of Duvall Contracting. (*See* Compl. 6.) Thus, there was evidence that Mr. Duvall, an officer and owner of Damico, Inc., exercised a significant degree of ownership, management and control over Duvall Contracting. Similarly, it is

undisputed that Damico Inc. used union labor to perform demolition work on the NY Times Project and that Duvall Contracting used non-union labor to perform the same type of work on the same project.  (*See* Compl. 7.)  Thus, there was evidence that the work performed on the NY Times Project was the type of work covered by the CBA.  Accordingly, the Arbitrator's finding that Plaintiff violated Article 17.20 of the CBA was not irrational.

### C. Plaintiff Has Failed To Demonstrate that the Arbitrator Showed a Manifest Disregard For the Terms of the CBA or Exceeded His Authority.

Plaintiff does not dispute any of the facts underlying the Arbitrator's finding that Damico Inc. and Duvall Contracting were double-breasted entities.  Instead, Plaintiff moves to vacate the arbitration awards on seven separate grounds, arguing that the Arbitrator either exceeded his authority or showed a manifest disregard for the terms of the CBA.  Each argument will be addressed in turn.

First, Plaintiff argues that the Arbitrator exceeded his authority by issuing an award against Duvall Contracting, a non-signatory to the CBA.  Plaintiff is correct that, ordinarily, an arbitrator's double-breasting determination cannot bind the non-signatory to a CBA unless a district court has already determined that the two entities are a single employer.  *Eichleay Corp.*, 944 F.2d at 1059 n.12  (discussing *Laborers' Int'l Union of North Am. v. Foster Wheeler Corp.*, 868 F.2d 573 (3d Cir. 1989)).  However, where, as here, the non-signatory entity has argued the merits of its double-breasting position to the arbitrator, the non-signatory waives any entitlement it may have had to a judicial

5

determination of that issue.  *See United Indus. Workers v. Gov't of the Virgin Islands*, 987 F.2d 162, 168 (3d Cir. 1993) (A "party may waive its right to challenge an arbitrator's authority to decide a matter by voluntarily participating in an arbitration"); *N.J. Reg'l Council of Carpenters v. Dynasty Contracting, Inc.*, No. 11–2065, 2011 U.S. Dist. LEXIS 82683, at *13-16 (D.N.J. July 27, 2011) (non-signatory waived its right to judicial determination of alter ego status because it participated in the arbitration).[2]

Second, Plaintiff argues that the Arbitrator exceeded his authority by deciding a non-arbitrable representational issue; namely, that "going forward, the Union would represent Duvall Contracting employees." (Pl.'s Reply Br. 6, ECF No. 8.)  This mischaracterizes the Arbitrator's findings.  The Arbitrator did not determine that the Union must now represent Duvall Contracting's new, non-union employees.  He merely determined that, pursuant to the terms of the CBA, Duvall Contracting must use union labor for certain types of work.  (*See* Compl. Ex. 7, at 10, ECF No. 1-7.)  The Third Circuit has specifically held that an award issued to union laborers who should have been dispatched to the work in question "does not implicate a representational issue." *Eichleay Corp.*, 944 F.2d at 1058.

---

[2] The case that Plaintiff relies on does not compel a different result.  In *N.J. Reg'l Council of Carpenters v. Heartland Dev. Co., et al.*, No. 09-178, 2010 U.S. Dist. LEXIS 41139 (D.N.J. Apr. 27, 2010), the non-signatory entity was never given an opportunity to challenge the claims against it.  *Id.* at *16.  That is hardly the case here.  In this case, Plaintiff had the opportunity to raise the arbitrability issue before a district court judge prior to the arbitrations.  Plaintiff then had the opportunity to fully argue the merits of its double-breasting position before an arbitrator.  As such, Plaintiff has waived its right to a judicial determination of the double-breasting issue.

<u>Third</u>, Plaintiff argues that the Arbitrator exceeded his authority because the Funds are not parties to the CBA. This argument lacks merit, as Article 17.20 of the CBA explicitly states that "[e]ither the Union or an affiliated benefit fund or funds may bring a grievance pursuant to this provision." (CBA at 61.) Plaintiff further argues that, under the CBA, an employer is not required to arbitrate claims against the Funds and may instead bring these claims in court. This argument misses the point: the fact that Plaintiff may bring claims against the Funds in court does not divest the Funds of their right to arbitrate claims against Plaintiff.

<u>Fourth</u>, Plaintiff argues that the issues raised in the arbitration were disputes over unpaid wages and benefits and, pursuant to Article 21 of the CBA, such disputes were not arbitrable. Plaintiff mischaracterizes the dispute. The Arbitrator was asked to interpret Article 17.20 of the CBA. Interpretation of a provision of the CBA is clearly an arbitrable question pursuant to paragraphs 21.20(b) and 24.20 of the CBA. While resolution of the double-breasting issue ultimately impacts Plaintiff's responsibility for paying wages and benefits, that does not make this an unpaid wages dispute. Furthermore, Judge Sheridan already determined that the double-breasting provision was arbitrable, and that any ambiguities concerning the scope of the arbitrable issues should be resolved in favor of arbitration. (Compl. Ex. 6, at 8-9); *see also AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-85 (1960)) (if an issue is not expressly excluded

from arbitration, "only the most forceful evidence of a purpose to exclude the claim from arbitration" will suffice).

Fifth, Plaintiff argues that the Arbitrator exceeded his authority by deciding an issue that was outside the scope of the parties' submissions.  Specifically, Plaintiff argues that the Union submitted a grievance over "Duvall's alleged failure to pay wages and benefits, not [over] whether Duvall Contracting was a single employer or somehow violated Article 17.20."  (Pl.'s Br. 17, ECF No. 1-10.)  This characterization of the question submitted to the Arbitrator is clearly contradicted by the record.  The question that Judge Sheridan submitted to the Arbitrator was "whether the anti-double breasting provision [of the CBA was] engendered."  (Compl. Ex. 6, at 8.)  The question that the Arbitrator answered was whether Article 17.20 of the CBA had been violated.  (Compl. Ex. 7, at 1, 10); *see also Mobil Oil Corp. v. Independent Oil Workers Union*, 679 F.2d 299, 302 n.1 (3d Cir. 1982) ("[G]reat deference must be accorded the arbitrator's interpretation of the submission.").  Finally, in a different section of its brief, even Plaintiff admits that "the Union sought an award from Arbitrator Pierson declaring that Duvall Contracting . . . is bound by the CBA because it is a single employer with Damico Inc. [and] [t]hat is exactly what the arbitrator did."  (Pl.'s Br. 9.)

Sixth, Plaintiff argues that the Arbitrator failed to "draw the essence of his award from the CBA" in holding Plaintiff liable for making contributions to the Funds going forward.  (Pl.'s Br. 18.)  Arbitrators are given great deference in formulating remedies as long as their awards draw from the agreement.  *See United Paperworkers Int'l Union*,

484 U.S. at 41. In this case, the Arbitrator's award emanated exclusively from his interpretation of Article 17.20 of the CBA; thus, the award was directly drawn from the language of the agreement. Furthermore, a finding that Damico Inc. and Duvall Contracting are double-breasted entities essentially necessitates a finding that Duvall Contracting is bound by the CBA. *See Blair Comms., Inc.*, 640 F. Supp.2d at 641. As such, the Arbitrator did not err in holding Plaintiff liable for future contributions.

<u>Finally</u>, Plaintiff argues that the awards are "fatally flawed" because the Arbitrator entered the awards even though he found that Defendants did not follow the grievance procedures. (Pl.'s Br. 19.) A party's failure to follow procedures is not a proper ground for vacatur of an arbitration award; decisions as to procedural arbitrability are for the arbitrator to decide. *See Bell Atlantic Pennsylvania v. Communications Workers, Local 13000*, 164 F.3d 197, 201-02 (3d Cir. 1999). In this case, the Arbitrator considered the procedural defects at issue and clearly decided that they did not warrant a different result. The Court will not second guess that decision.

## III. CONCLUSION

For the reasons stated above, Plaintiff's motion to vacate the arbitration awards is **DENIED**. An appropriate order follows.

                                             /s/ William J. Martini
                                        **WILLIAM J. MARTINI, U.S.D.J.**

**Date: December 16, 2011.**